The opinion of the court was delivered by
Tilghman, C. J.
(After stating the case.) The errors assigned in this case are, 1st. The rejection of John Patterson, a witness produced by the defendant. 2. In the opinion of the courts on several points proposed by the counsel for the defendant.
An attachment of contempt, had issued against Patterson, who had been subpoenaed on the part of the defendant, and being brought . in, after the evidence was closed, and one counsel on each side had spoken, the court did not think proper to admit his testimony.
This is a case which must be left to the discretion of the court by whom the cause was tried. It cannot be maintained, that either *186 party has a right to introduce testimony, after the evidence has been closed, and counsel have addressed the jury. The disorder which such a practice would produce, is evident. In the present ease, for instance, the plaintiffs said, that some of their witnesses had left the court. But it might have been necessary to examine them again, in consequence of what might come from this new witness, or to call some of them who had been in readiness but had not been examined before; what was to be done then? The cause must either be suspended until all the plaintiffs’ witnesses could be collected, or in order to do justice to the plaintiffs, if their witnesses could not be had, a juror might be withdrawn, and the cause continued. These aré inconveniences too great to be submitted to. Nevertheless a case' may occur, in which the court may see plainly, that the introduction of new testimony may be proper. The law leaves the matter, therefore, to their discretion, and whether that discretion be exercised one way or the other, there can be no error of which the Superior Court can take notice.
No less than nine errors were assigned in the court’s opinion, but in the course of the argument they were reduced to two. 1st. On thé construction of the will of John Gray, and the receipt given by Mary Gray to Hannah Gray. 2d. On the act of limitations.
1. The counsel for the defendants contended, that the ¿616 paid by Hannah Gray to Mary Gray, was the full valué of that part of the land which was devised to Mary, and therefore the receipt of the money by Mary was equal to a conveyance of the land. But the cburt Was of a contrary opinion, and I think the court was right. The devise to Mary Gray, was upon condition that she should make no claim of £ 13 which was due to her from the testator’s estate. Therefore when she made the claim, she relinquished the devise, and taking nothing by the devise, she had no estate to convey. Indeed, there is not one word in the* receipt given by Mary to Hannah Gray, which looks like an intent to convey land. It is simply a receipt for money. But when Hannah paid this money, it is probable she might think she acquired a title, by coming into the place of Mary, who would have had title if she had not claimed the money. And in fact, it made no difference to the estate of the testator, whether Mary relinquished the debt, or it was paid’ to her by Hannah; for in either case, the estate was discharged from it. When Mary refused to accept the devise, the land deascended to James Gray; the .eldest brother of the testator, and it was incumbent on him to pay the ¿6 13, which' Mary insisted on receiving. Then, when he did not pay it, but suffered it tobe paid by the widow, and permitted her to remain so long in possession, it seems very much like an opinion in the family, that the land belonged to the widow. And this may be accounted for, when it is considered, that until the year 1760, titles by warrant and survey, Were considered as personal estate, and as such sold by executors and administrators, even without an order of the Orphan’s Court. *187 Under such circumstances, if it could be made out, that £ 16 was the full value of the land, and that James Gray, the heir of the testator, knew of the payment by Hannah Gray, acquiesced in it, and suffered her and her second husband, Williams, to hold the possession for 25 years, and expend their money and labour in improvements, under an idea that the property was in Hannah, I am not sure that Chancery would not decree a conveyance by James to Hannah. I give no opinion on it however, as that is not the case which is before us. But the circumstances which I have mentioned, may have some bearing on the questions arising on the act of limitation, which I will now consider.
2. In order to form a fair opinion of the charge of the president of the court below, I will give it, so far as concerns the present question, in his own words: “ The defendants rely also on their long possession. Its efficacy must be determined by the evidence in reT lation to it. One half of the tract was devised to the widow and Jane, on the event of their returning from captivity. The widow did return, and was entitled, at all events to a possession of part of the tract so devised, according to the terms of the will. If Mary owned the other part under the will, the widow and she would be in the possession of the other. So if Mary did not take under the will, but relinquished her right, and old John Gray died intestate, as to the one half, then the person to whom such moiety would descend, by the act of assembly, or the course of the common law, would be a tenant in common with the widow, and the possession of one would be the possession of the other, and not such adverse possession as would without actual ouster, give title after 21 years. It would be otherwise, if the two parts of the tract were separatedfrom the other. In that case, actual adverse possession by one against the other, for 21 years or upwards, before suit brought, would be a positive bar against such possession.” Now in the first place, there was an error in saying, that the devisees under the will of John Gray, were tenants in common. The devise was to each in severalty, of a moiety of the land, to be laid off at a particular end of the tract. Cerium est, quod cerium reddipotest. Either of the devisees might have supported an ejectment for his moiety, without partition, and the jury might have laid it off for him. Tenants in common have unity of possession of the whole, which certainly these devisees had not. And on a writ of partition between tenants in common, the land is divided, not according to quantity, but value. One may have greater quantity, and yet no more than an equal value. But the partition her tween these devisees, was according to quantity, and each was to have his quantity in a certain place. There is no ground, therefore, for saying, that when one entered on the whole, and held the whole for many years, he was to be considered as holding for the other. But even supposing there was a tenancy in common, the law was not given in charge to the jury, as it ought to have been, *188 For when one tenant in common enters on the whole, and takes the profits of the whole, and claims the whole exclusively, for 21 years, the jury ought to presume an actual ouster, though none be proved. So far as the evidence appears in this case, Hannah Gray certainly did consider herself as owner of the whole, after she had paid the £ 16 to Mary Gray, and the heir at law seems to have been of the same opinion, for he never made any claim that we hear of, for upwards of 20 years. But, from the charge of the court, the jury must have been led to believe, that the sole possession of Mary Gray was of no avail, unless an actual ouster was proved, because she was tenant in common with James Gray.
I am of opinion that in this part of the charge there was error, for which the judgment should be reversed, and a venire de nova awarded.
Judgment reversed, and a venire facias de novo awarded.